**WO**  NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| J & J Sports Productions Incorporated,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Jose O Rubio, *et al.*,<br><br>　　　　　Defendants. | No. CV-16-01111-PHX-JJT<br><br>**ORDER** |

At issue are the following Motions: Defendant Jose O. Rubio's Motion to Dismiss (Doc. 14, Mot.), to which Plaintiff J & J Sports Productions ("J & J") filed a Response (Doc. 17, Resp.) and Mr. Rubio filed a Reply (Doc. 24, Reply); and Plaintiff's Motion to Strike Defendant Grullo's Fine Mexican Food, LLC's ("Grullo's") Affirmative Defenses (Doc. 19, Pl.'s Mot.), to which Grullo's filed a Response (Doc. 26) and J & J filed a Reply (Doc. 28). For the reasons that follow, the Court will deny Mr. Rubio's Motion to Dismiss and grant in part and deny in part J & J's Motion to Strike.

**I.　　DEFENDANT MR. RUBIO'S MOTION TO DISMISS**

　　**A.　　Background**

When analyzing a complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the plaintiff's non-conclusory, material allegations in the complaint and construes them in the light most favorable to the plaintiff. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002)

(citing *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

J & J alleges the following in its Complaint. J & J is a California corporation that was granted exclusive nationwide commercial distribution rights to "The Fight of the Century," Floyd Mayweather v. Manny Pacquiao Championship Fight Program (the "Program"), telecast nationwide on Saturday, May 2, 2015. Pursuant to its contract, J & J entered into sublicensing agreements with various commercial entities in the United States in which it granted these entities limited sublicensing rights to publicly show the Program at their respective establishments. Defendant Mr. Rubio is the managing member of Grullo's Fine Mexican Food, LLC, which owns and operates the commercial business Grullo's a/k/a/ Tacos El Grullo a/k/a Grullos Fine Mexican Food ("Grullo's Restaurant")[1] operating in Mesa, Arizona. J & J alleges that Defendant unlawfully intercepted the Program for which J & J had distribution rights.

J & J alleges that Mr. Rubio is an individual specifically identified on the business license for Grullo's Restaurant and is an owner, and/or operator, and/or licensee, and/or permittee, and/or person in charge, and/or individual with dominion, control, oversight and management of those entities. Mr. Rubio's name is listed on the Maricopa County Environmental Service Department permit to operate for Grullo's Restaurant. J & J states that on the night of the Program, Mr. Rubio had the right, ability, and obligation to supervise the activities of Grullo's Restaurant, including the interception of the Program. It further alleges that on information and belief, on the night of the Program, Mr. Rubio specifically directed employees to intercept and broadcast the Program at Grullo's Restaurant or that the actions of the employees are directly imputable to Mr. Rubio due to his responsibility for the actions of Grullo's Restaurant. J & J states that Defendant, as a managing member and individual listed on the Grullo's Restaurant business license, had a direct financial interest in its activities, including the interception of the Program. Based

---

[1] The Court notes that there are inconsistencies in the parties' briefing regarding the spelling of the various Grullo's entities listed as Defendant, but the Court refers to them collectively as Grullo's Restaurant.

on the alleged unlawful broadcast of the Program, J & J alleges Grullo's Restaurant obtained increased profits.

Based on the above allegations, J & J brought the following counts against Defendant: 1) Violation of Title 47 U.S.C. § 605; and 2) Violation of Title 47 U.S.C. § 553. Defendant now moves to dismiss J & J's claims against him.

### B. Legal Standard

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1998). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

**C.    Analysis**

47 U.S.C. § 605 prohibits the unauthorized interception and publication or use of radio communications, including satellite broadcasts. 47 U.S.C. § 605(a); *see J & J Sports Productions, Inc. v. Manzano*, No. C–08–01872 RMW, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008). 47 U.S.C. § 553 prohibits unauthorized interception of cable communications. 47 U.S.C. § 553(a)(1). The elements of a claim under § 605 are that the defendant "(1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by the plaintiff." *Cal. Satellite Sys. v. Seimon*, 767 F.2d 1364, 1366 (9th Cir. 1985). Section 553 prohibits a person from "intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system." 47 U.S.C. § 553(a)(1).

Here, J & J alleges that it transmitted the program, and that:

> With full knowledge that the Program was not to be intercepted, received, published, divulged, and/or exhibited by commercial entities unauthorized to do so, each and every one of the above named Defendants, either through direct action or through actions of employees or agents directly imputable to Defendants . . . , did unlawfully intercept, receive, publish, divulge, display, and/or exhibit the Program at the time of its transmission at [the] commercial establishment in Mesa Arizona . . . .

(Doc. 1, Compl. ¶ 19.)

Mr. Rubio's first argument is that, under Arizona state law, he cannot incur personal liability because he is not a proper party to the proceedings by or against the LLC solely by reason of being a member of the LLC. (Mot. at 3 (citing A.R.S. §§ 29-654, 29-656).) J & J, however, does not bring its claims against Mr. Rubio solely by reason of being a member of the LLC. Rather, J & J alleges that Mr. Rubio is liable under the standard that numerous district courts have employed in determining individual liability for claims alleging violations of § 553 and § 605. *See, e.g.*, *G & G Closed Circuit Events, LLC v. Miranda*, No. 2:13-CV-2436-HRH, 2014 WL 956235, at *4 (D. Ariz. Mar. 12, 2014); *J & J Sports Prods., Inc. v. Walia*, No. 10-5136 SC, 2011 WL 902245, at *3 (N.D.

Cal. Mar. 14, 2011) ("Indeed, it appears that all courts addressing the issue have applied the copyright standard for individual liability to violations of § 553 and § 605.") Under the applicable standard, "[t]o establish vicarious liability of an individual shareholder or officer for a violation of § 553 or § 605, a plaintiff must show that: (1) the individual had a right and ability to supervise the infringing activities and (2) had an obvious and direct financial interest in those activities." *Miranda*, 2014 WL 956235, at *4 (quoting *Walia*, 2011 WL 902245, at *3). That an individual is a shareholder or officer "is insufficient to show that he or she had the requisite supervision authority or financial interest to warrant individual liability." *Id.* "The plaintiff must allege that the defendant had supervisory power over the infringing conduct itself" and "cannot merely allege that the shareholders or officers profit in some way from the profits of the corporation." *Id*.

Here, J & J has alleged that Mr. Rubio, as managing member of Grullo's Fine Mexican Food, LLC and as an individual identified on the business license for Grullo's Restaurant, had the right, ability, and obligation to supervise the activities of the business on May 2, 2015—the night of the Program. (Compl. ¶¶ 9–10.) J & J also alleges that Defendant "specifically directed the employees of [Grullo's Restaurant] to unlawfully intercept and broadcast J & J's Program" on the night of the Program or is responsible for their actions. (Compl. ¶ 11.) J & J further alleges Mr. Rubio supervised and/or authorized the unlawful broadcast of J & J's Program resulting in increased profits. (Compl. ¶ 13.) And J & J alleges that Mr. Rubio, as managing member and as individual listed on the business license, "had an obvious and direct financial interest in the activities of [Grullo's Restaurant,] which included the unlawful interception of Plaintiff's Program." (Compl. ¶ 12.)

J & J's allegations are similar to those in *Miranda* and *J & J Sports Productions, Inc. v. Munguia*, No. CV-12-01961-PHX-SRB (D. Ariz. July 3, 2013),[2] in which the courts held plaintiffs' allegations were sufficient to state plausible claims against the

---

[2] The Court notes that this opinion is unpublished, but was provided to the Court in the parties' briefing.

- 5 -

defendants personally. In those cases, the plaintiff also alleged the defendant held a position of authority in the business, supervised the activities of the business, directed employees or was responsible for employees' actions resulting in interception of plaintiff's program, and authorized the unlawful interception for financial gain. *See Mirdanda*, 2014 WL 956235, at *5. Although J & J may learn of more details about Defendant's specific duties and supervisory decision as the case develops, at this stage, J & J has sufficiently alleged that Defendant had the right and ability to supervise the infringing activity, and that he had an obvious and direct financial interest in the activity. *See Miranda*, 2014 WL 956235, at *4. The Court will therefore deny Mr. Rubio's Motion to Dismiss.

## II. MOTION TO STRIKE

J & J moves to strike Grullo's Fine Mexican Food, LLC's ("Grullo's") four affirmative defenses.

### A. Legal Standard

Federal Rule of Civil Procedure 8(c) provides that a defendant must "state any avoidance or affirmative defense" in answering a complaint. The Ninth Circuit Court of Appeals has construed this requirement to mean that a defendant must give "fair notice" of affirmative defenses to the plaintiff. *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1023 (9th Cir. 2010) (citing *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979)). The Supreme Court has long held that fair notice requires only a plain statement of the nature and grounds of a claim or defense. *See Kohler v. Islands Rests., LP*, 280 F.R.D. 560, 564 (S.D. Cal. 2012) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

An affirmative defense may be insufficient as a matter of pleading or of law. *Id.*; *Fed. Deposit Ins. Corp. v. Main Hurdman*, 655 F. Supp. 259, 262 (9th Cir. 1987). A party may ask the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" under Rule 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v.*

*Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quotation omitted), *rev'd on other grounds*, 510 U.S. 517 (1994). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Id.* (quoting 5 Charles A. Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 1382, at 706–07, 711 (2d ed. 1990)).

Courts generally view motions to strike disfavorably "because they are often used to delay and because of the limited importance of the pleadings in federal practice." *Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104, 1113 (E.D. Cal. 2009). "A motion to strike should not be granted unless it is absolutely clear that the matter to be stricken could have no possible bearing on the litigation." *Id.*

**B.     Analysis**

Grullo's raises two affirmative defenses relating to damages under 47 U.S.C. §§ 553 and 605, and alleges that it is entitled to a reduction in damages. (Doc. 12, Answer ¶¶ 30, 31.) J & J argues these defenses should be stricken because they are denials, not affirmative defenses. (Pl.'s Mot. at 4.) J & J cites *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002), for the proposition that a defense that shows that a plaintiff has not met its burden of proof is not an affirmative defense. (Pl.'s Mot. at 4.) The Court notes that Grullo's affirmative defenses as to damages do, in part, allege that J & J has not met any willful and knowledge element of its claims. Whether Grullo's willfully and knowingly violated the provisions, however is to be considered at a later stage when the Court determines what damages, if any, are proper under the relevant statutes.

J & J also argues that the affirmative defenses relating to damages should be stricken because they are redundant and fail to provide fair notice of the defense. (Pl.'s Mot. at 5.) The Court disagrees. All that is required to provide fair notice is a plain statement of the nature and grounds of a defense. *See Kohler*, 280 F.R.D. at 564. The first and second affirmative defenses provide "fair notice" to J & J that Grullo's seeks to establish a lower level of *mens rea*, that it did not knowingly violate the law, under the

applicable statutes. *See Wyshak*, 607 F.2d at 927; *J & J Sports Prods., Inc. v. Gonzales*, No. CV-15-00801-PHX-SPL, Doc. 29 at 2 (D. Ariz. Nov. 30, 2015).[3] The Court also does not find that the affirmative defenses are so redundant that the Court should strike them. The Court thus denies J & J's Motion to Strike as to Grullo's first two affirmative defenses relating to damages.

In Grullo's third affirmative defense, it alleges that the Program, if broadcast at the business, was a tape-delayed match that was not intercepted, but legitimately broadcast from Grullo's provider, SKY Television. (Answer ¶ 32.) J & J argues that this is not an affirmative defense, but a denial of liability, and that the defense is legally insufficient. (Pl.'s Mot. at 6.) J & J cites two federal district court decisions to support its argument that it is irrelevant that the Program may have been "tape-delayed." (Pl.'s Mot. at 6–7.) The Court is not bound by those decisions and further, finds them distinguishable based on their posture at summary judgment. Here, the Court does not have the benefit of reviewing facts that may be pertinent to Grullo's affirmative defense, and it will not strike the defense at this stage. *See Brewer*, 609 F. Supp. 2d at 1113. The Court does note that to the extent Grullo's uses the term "interception" in this defense, the Court agrees with J & J that 47 U.S.C. §§ 605 and 553 do not only prohibit interception; the provisions also prohibit other actions, including "receiving" or "divulging" information and communications.

Finally, Grullo's states that SKY Television, its provider, is an indispensable party that J & J failed to name as a defendant pursuant to Federal Rule of Civil Procedure 19. (Answer ¶ 34.) Rule 19(a)(1)(A) provides that a person "must be joined as a party" if "in that person's absence, the court cannot accord complete relief among existing parties." Further, Rule 19(a)(1)(B) provides that a person "must be joined as a party" if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or

---

[3] The Court notes that this opinion is unpublished, but was provided to the Court in the parties' briefing.

- 8 -

impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." If that required person cannot be joined, then "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

The Court agrees with other district courts and their reasoning in cases nearly identical to the case at bar, in which they found the cable or satellite provider or copyright holder is not an indispensable party in § 553 and § 605 actions. *See J & J Sports Prods. Inc. v. Cela*, 139 F. Supp. 3d 495, 504–05 (D. Mass. 2015) (finding salesperson and installer of direct-to-home satellite television broadcasting service were not necessary parties); *Joe Hand Promotions, Inc. v. Bragg*, No. 13-CV-02725-BAS JLB, 2014 WL 2589242, at *9 (S.D. Cal. June 10, 2014) (finding DirecTV is not an indispensable party and denying defendant's motion to dismiss); *J & J Sports Prods., Inc. v. Coyne*, No. C 10-04206 CRB, 2011 WL 227670, at *2 (N.D. Cal. Jan. 24, 2011) (striking affirmative defense of failure to join indispensable party with prejudice as legally insufficient); *J & J Sports Prods., Inc. v. Live Oak Cnty. Post No. 6119 Veterans of Foreign Wars*, No. CIV A C-08-270, 2009 WL 483157, at *4 (S.D. Tex. Feb. 24, 2009) (finding DirecTV is not an indispensable party and denying defendant's motion to dismiss); *Nat'l Satellite Sports v. Gianikos*, No. 00 CV 566, 2001 WL 35675430, at *2–3 (S.D. Ohio June 21, 2001) (finding complete relief can be afforded to plaintiff in the absence of the provider Time Warner). The Court can effectuate complete relief between the existing parties, J &J and Defendants, and if Defendants are found liable, the issues between the parties will be resolved. *See Cela*, 139 F. Supp. 3d at 505. Accordingly, SKY Television is not a necessary party under Rule 19(a)(1)(A).

Defendant also does not show necessity of SKY Television under Rule 19(a)(1)(B). Even if SKY Television was claiming an interest in this case, its supposed liability is not at issue here and therefore nothing impedes its ability to protect its interests. Defendant also cannot show that SKY Television will be subject to a substantial

risk of incurring "inconsistent obligations" if the Court proceeds with this case. The Court does not find that SKY Television is an indispensable party under Rule 19, and thus finds Grullo's fourth affirmative defense is legally invalid. The Court will grant J & J's Motion to Strike as to Defendant's fourth affirmative defense. *See Kohler*, 280 F.R.D. at 564.

### III.  CONCLUSION

The Court finds that J & J's allegations support its claims for violation of Title 47 U.S.C. § 605 and violation of Title U.S.C. § 553 against Mr. Rubio. Accordingly, the Court denies Mr. Rubio's Motion to Dismiss J & J's claims against him. The Court also denies J & J's Motion to Strike Grullo's Affirmative Defenses as to Grullo's first three defenses, but grants J & J's Motion as to the fourth defense. Grullo's fourth affirmative defense is stricken from its Answer (Doc. 12).

IT IS THEREFORE ORDERED denying Defendant Jose O. Rubio's Motion to Dismiss (Doc. 14).

IT IS FURTHER ORDERED granting in part and denying in part Plaintiff's Motion to Strike Defendant's Affirmative Defenses (Doc. 19). Defendant Grullo's fourth affirmative defense (Doc. 12 ¶ 34) shall be stricken.

IT IS FURTHER ORDERED that Defendant Jose O. Rubio shall file an Answer to the Complaint within 14 Days of entry of this Order.

Dated this 1st day of August, 2016.

Honorable John J. Tuchi
United States District Judge