# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| J & J Sports Productions Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Jose O Rubio, *et al.*,<br><br>Defendants. | No. CV-16-01111-PHX-JJT<br><br>**ORDER** |

At issue is Plaintiff J & J Sports Productions Incorporated's Motion for Summary Judgment (Doc. 36, Mot.[1]), to which Defendants Grullo's Fine Mexican Food LLC and Jose O. Rubio filed a Response (Doc. 41, Resp.), and in support of which Plaintiff filed a Reply (Doc. 43, Reply). The Court finds these matters appropriate for resolution without oral argument. *See* LRCiv 7.2(f).

**I.    BACKGROUND**

Plaintiff, an international closed-circuit distributor of sports and entertainment programming, purchased the exclusive United States commercial distribution rights to broadcast *"The Fight of the Century": Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight Program*. Plaintiff entered into sub-licensing agreements with commercial establishments that permitted public exhibition of the broadcast. Plaintiff did not enter into such an agreement with Defendants, an LLC and individual who own and

---

[1] In citing to Plaintiff's Motion, the Court refers to the memorandum in support, attached as Attachment 1 to its Motion.

operate the restaurant Tacos El Grullo. When the program aired—May 2, 2015—two of Plaintiff's independent investigators entered Tacos El Grullo at 8:19 p.m. and 8:55 p.m., respectively. Each investigator reported that the program was aired live inside Tacos El Grullo. The first investigator, Jenny Helton, noted that there were six televisions inside the establishment, four of which were airing the event, that the capacity of the establishment was 70, and that she personally counted the number of patrons three times, totaling 60. The second investigator, Valerie Combs, noted that all six televisions were airing the event, estimated the capacity at 175 people, and counted 89, 90, and 92 patrons during her time at Tacos El Grullo. The investigators also noted a Sky Television satellite dish on the roof of the restaurant and that the broadcast was in Spanish. Defendants did not advertise the program, nor did they alter food or drink prices or otherwise promote the event. On April 18, 2016, Plaintiff filed its Complaint (Doc. 1) alleging violations of the Communications Act, 47 U.S.C. §§ 605 (Count 1) and 553 (Count 2).

## II. LEGAL STANDARD

### A. Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party

may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

**B.    The Communications Act**

The Communications Act provides that "no person receiving [or] assisting in receiving . . . any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney . . . ." 47 U.S.C. § 605(a).[2] "[A]ny person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action in a United States district court or in any other court of competent jurisdiction." 47 U.S.C. § 605(e)(3)(A).

---

[2] The Court notes, as Plaintiff does, that there is a split of authority among courts as to whether violations such as those alleged here implicate 47 U.S.C. § 553 as well. (Mot. at 4 (collecting cases).) Plaintiff, though, requests that liability be found pursuant to § 605. In recognition of *Directv, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008), as well as Plaintiff's request, the Court will analyze Plaintiff's Motion under § 605 and treat Count II of Plaintiff's Complaint, brought under § 553, as surrendered. *See Kingvision Pay-Per-View, Ltd. v. Body Shop*, No. 00 CIV 1089 LTS KNF, 2002 WL 393091, at *4 (S.D.N.Y. Mar. 13, 2002) ("it is well-established that, when a defendant's conduct violates both Sections 553 and 605, Plaintiff may only recover damages pursuant to one of them").

## III. ANALYSIS

### A. Liability

Plaintiff argues that because it did not authorize Defendants to intercept, receive, exhibit, or otherwise broadcast the program shown at Tacos El Grullo, Defendants *per se* violated the Act. (Mot. at 5-11.) Defendants respond that they legally obtained the signal from their satellite provider, Sky Television, that Plaintiff's distribution agreement is invalid and/or nonexclusive, that Plaintiff's investigators lack credibility, and that Plaintiff has failed to meet its burden that the program was shown live at the establishment. (Resp. at 7-12.)

To establish liability under 47 U.S.C. § 605, Plaintiff must prove that the Defendants unlawfully intercepted, received, published, or divulged Plaintiff's privileged communication. 47 U.S.C. § 605(a). Here, Plaintiff has not provided specific evidence of interception. However, as the exclusive licensee, it is the sole entity that could have permitted or provided Defendants with access to the program, which it did not. Defendants at no point deny that the program was broadcast inside Tacos El Grullo but maintain that they did not violate § 605(a) because they were permitted to by way of their Sky Television subscription. The argument is without merit. The fact that Defendants may have somehow legally purchased a Sky Television subscription—a fact that is far from established—does not immunize them from liability for broadcasting the event to the Tacos El Grullo patrons without obtaining authorization from Plaintiff, the exclusive licensee. *See Garden City Boxing Club, Inc. v. Vinson*, No. 3-03-CV-0700-BD(P), 2003 WL 22077958, at *2 (N.D. Tex. Sept. 3, 2003) (collecting cases). Indeed, the "absence of an 'interception' does not get [Defendants] off the hook of § 605." *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900 (6th Cir. 2001). As another court has stated:

> Even assuming, as these defendants contend, that there was no "interception" here because [the bar] was "authorized" by [the residential distributor] to receive the Event on a pay-per-view basis, defendants still have violated the Act because they clearly were not authorized to then broadcast the Event to the patrons of the commercial establishment such as [the bar] . . . . The first and third sentences of [§ 605] do not . . . require an "interception" of cable transmission and clearly

> proscribe the unauthorized divulgence or use of communications which have been "received" legally for certain purposes.

*That's Ent., Inc. v. J.P.T., Inc.*, 843 F. Supp. 2d 995, 999 (D. Md. 1993) (cited and quoted with approval by *Nat'l Satellite Sports*, 253 F.3d 900). Further, § 605 is a strict liability statute and questions of knowledge and willfulness go only to damages, rather than liability. *See Doherty v. Wireless Broad. Systems of Sacramento, Inc.*, 151 F.3d 1129, 1131 (9th Cir. 1998) (The statutes "take into consideration the degree of the violator's culpability and provide for reduced damages in those instances where the violator was unaware of the violation.").

Defendants provide no evidence whatsoever that they had a legal or valid Sky television subscription or, more importantly, that such a subscription would allow them to broadcast the event—live or otherwise. While Rubio states via affidavit that he had a satellite subscription to Sky, this self-serving, conclusory affidavit is unsupported by any evidence of the agreement or the rights it confers. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (refusing to find a "genuine issue" of fact where "the only evidence presented is 'uncorroborated and self-serving' testimony") (citation omitted); *J & J Sports Prods., Inc. v. Brewster "2" Cafe, LLC*, No. 4:11-CV-00690-SWW, 2014 WL 4956501, at *3 (E.D. Ark. Oct. 2, 2014) ("[Defendant] cannot credibly claim it was authorized by Comcast to exhibit the Program and then claim, without supporting evidence, that it had no knowledge of Comcast's Terms and Conditions as applicable to its account.").

While Defendants also dispute that Plaintiff had proprietary ownership over the program, their argument is perfunctory, only pointing to one allegedly missing signature—not to any controverting fact or evidence. (Resp. at 8-9.) While this might raise a question of fact as to whether or not Plaintiff was the exclusive licensee, it does not—as Defendants argue—establish Plaintiff was not the exclusive licensee. Regardless, Plaintiff provides evidence of that signature in and attached to its Reply and no genuine dispute exists as to Plaintiff's rights. (Reply at Ex. 2.) Similarly, Defendants' argument

that Plaintiff's exhibition rights are based on an unknown occupancy capacity is also unavailing. (*See* Reply at 4.)

Defendants next argue that Plaintiff's investigators lack credibility and that the Court must allow a fact-finder to weigh this credibility in evaluating their statements. (Resp. at 8, 11.) However, the only discrepancies Defendants cite are the amount of patrons and the number of televisions showing the program. Not only could these inconsistencies be explained by the temporal difference in the investigators' visits, but they do not—in any event—eviscerate the entirety of their affidavits. Instead, such discrepancies are addressed in determining damages, rather than liability, as no party disputes that the program was broadcast.

Finally, to the degree that Defendants argue they escape liability because the program was tape delayed, or that it was delayed simply by transmission, receipt, and return transmission to and from Mexico (Resp. at 8-9), this too fails. First, their argument is essentially not that the program was tape delayed, but only that it may have been. Defendants have offered no evidence that the event was not shown live. This does not create a genuine issue of material fact. Instead, the only evidence before the Court is that of the investigator-affiants who declared that the fight was broadcast live. Second, courts in this district have held that such a tape-delayed broadcast would nonetheless violate the Act, were it unauthorized. *See, e.g.*, *J & J Sports Prods. Inc. v. Mosqueda*, No. CV-12-0523 PHX DGC, 2013 WL 2558516, at *3 (D. Ariz. June 11, 2013).

Defendants also argue that Plaintiff has failed to establish personal liability against Rubio. (Resp. at 12-15.) Specifically, Defendants argue that Plaintiff has failed to provide evidence that Rubio had an obvious and direct financial interest in the activities. (Resp. at 13.)

To hold an individual liable in his or her individual capacity, Plaintiff must demonstrate that Rubio had "a right and ability to supervise the violations and that he had a strong financial interest in such activities." *G & G Closed Circuit Events, LLC v. Miranda*, No. 2:13-CV-2436-HRH, 2014 WL 956235, at *1 (D. Ariz. Mar. 12, 2014).

Plaintiff presents evidence that Rubio was the sole manager and member of Grullo's Fine Mexican Food, LLC. While Defendants argue that genuine disputes of fact exist as to the ownership and control over the restaurant and the LLC,[3] they present no controverting evidence refuting Plaintiff's showing that Rubio was the sole owner and operator of the LLC and therefore was ultimately responsible for the restaurant's operations. Again, Defendants' argument is not that Rubio did not have dominion over the LLC, or that the LLC did not own and operate Grullo's, but simply that they might not have. And again, this does not create a genuine issue of fact, even when drawing all inferences in favor of Defendants as the non-movants. Plaintiff must present some probative evidence. *Anderson*, 477 U.S. at 256-57.

While Defendants also cite to *J & J Sports Prods., Inc. v. Martinez*, No. CIV.A. 13-6885, 2014 WL 5410199, at *1 (E.D. Pa. Oct. 23, 2014), and others, for the proposition that more than general ownership is necessary for personal liability based on ability to supervise (Resp. at 12), those cases each featured distinguishable facts. For example, in *Martinez*, the defendants presented evidence that they lived in a different state, were not managing the location at the time the event was shown, denied authorizing the interception, and denied even being present on the night in question. *Id.* at *6. Here, Defendants have not averred any similar facts. The Court's finding is thus consistent with Plaintiff's presented persuasive authority.

Defendants are correct that several courts have found that ownership alone does not satisfy the direct or strong financial interest portion of the analysis. (Resp. at 12-15.) Courts consider a direct financial benefit to be present when the infringing conduct acts

---

[3] Defendants spend a large portion of their Response arguing that Grullo's Fine Mexican Food, LLC does not do business as Tacos El Grullo or Grullo's Fine Mexican Food and that Rubio previously organized Tacos El Grullo, LLC but that it is now defunct. However, the entities sued are Jose O. Rubio and Grullo's Fine Mexican Food, LLC. Plaintiff presents evidence that Rubio was the sole manager and member of Grullo's Fine Mexican Food, LLC, is identified as the business owner in local records, and is the only individual identified as affiliated with the LLC. Defendants make no allegation and present no evidence that Grullo's Fine Mexican Food is not owned and operated by Rubio and the LLC and there is no genuine dispute as to Defendants' involvement and ownership of the LLC and the restaurant in question.

as a draw for customers. *Martinez*, 2014 WL 5410199 at *6 (citing *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004).) Although the draw for customers based on the infringing materials "need not be substantial," *Ellison*, 357 at 1078, Plaintiff has provided no evidence that the event was a draw for *any* patrons. Before the Court is no evidence of advertising, no statement from a patron that they attended to view the event, and no averment that more patrons were present on the night of the event than on standard nights without Plaintiff's content being broadcast. Thus, because Plaintiff's evidence fails to prove a direct or substantial financial interest, the Court will deny summary judgment as to the individual liability of Rubio and will instead grant Rubio summary judgment. Although Rubio curiously did not move for summary judgment in his Response, that does not preclude the Court from granting such relief. *See O'Keefe v. Van Boening*, 82 F.3d 322, 324 (9th Cir. 1982) (holding that the district court may *sua sponte* grant summary judgment to the nonmoving party where it determines that "there is no genuine dispute respecting a material fact essential to the proof of movant's case"); *Kassbaum v. Steppenwolf Prods., Inc.*, 236 F. 3d 487, 494 (9th Cir. 2000) ("It is generally recognized that a court has the power *sua sponte* to grant summary judgment to a non-movant when there has been a motion but no cross-motion."). Plaintiffs had full and complete opportunity to litigate the issue, cultivate discovery as to this element, and present such evidence here. Plaintiffs having failed to do so, Rubio is entitled to summary judgment. *See, e.g.*, *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) (allowing district court to enter judgment against any party that has had a "full and fair opportunity to ventilate the issues involved in the matter").

**B.     Damages**

Plaintiff argues for enhanced damages under the Act, contending that Defendants' violation was willful and such damages are necessary for general and specific deterrence. (Mot. at 12-16.)

As exclusive licensee of live closed-circuit distribution rights to the *Mayweather-Pacquiao* program in America, Plaintiff is an "aggrieved person" under the statute and

can bring a private right of action for either actual damages, including any profits of the violator that are attributable to the violation, or statutory damages "in a sum of not less than $1,000 or more than $10,000" for each violation. 47 U.S.C. §§ 605(a), (d)(6), (e)(3)(C)(i). Courts may increase the damage award by an amount not to exceed $100,000 for each willful violation of the statute. *Id.* at § 605(e)(3)(C)(ii).

Plaintiff requests $9,000 in statutory damages, as well as $30,000 in enhanced damages pursuant to 47 U.S.C. §605(e)(3)(C)(ii). (Mot. at 12.) Defendants respond that if any damages are warranted, the Court should reduce the award of damages to a sum of not more than $250 because Defendants were unaware of any violation. (Resp. at 8.) Courts have employed a variety of formulas in determining discretionary enhanced awards. *See, e.g.*, *J & J Prods., Inc. v. Twiss*, No. 11-CV-01559-WJM-KLM, 2012 WL 1060047 (D. Colo. Mar. 29, 2012); *Kingvision Pay-Per-View, Ltd.*, No. 00 CIV 1089 LTS KNF, 2002 WL 393091, at *4 (S.D.N.Y. Mar. 13, 2002). Specifically, courts have considered the licensing fee, the amount of televisions and patrons, advertising, and the estimated profits gleaned from the unauthorized broadcast. *Id.*

Here, Plaintiff has provided no evidence that Defendants are repeated illegal broadcasters of programming or that Plaintiff has incurred substantial damage from Defendants' violation. Nor does Plaintiff present evidence that Defendants advertised the event, raised drink or food prices, charged an entry fee to view the program, or otherwise promoted their broadcast. The broadcast was confined to a small geographic area and Defendants' restaurant is relatively meager in size. Although there is an implied willfulness in Defendants' conduct, Plaintiff has not shown how the signal was acquired, whether signals were in fact descrambled or intercepted in an effort to circumvent encryption, or that Defendants in fact knew that showing Sky Television satellite services—or this event in particular—in the establishment was illegal. Moreover, the investigators' reports and affidavits differ both as to the number of patrons and the amount of television screens broadcasting the program. Lacking such evidence and recognizing the lack of certainty regarding the specifics relevant to an enhanced damages

calculus, the Court does not find enhanced damages appropriate. On the other hand, without any evidence of any agreement with Sky Television, or what that agreement entails, it is impossible for the Court to ascertain Defendant LLC's state of mind regarding its violation and is therefore unable to reduce the statutory damages as Defendants request. Thus, the Court finds the statutory damages sufficient for both general and specific deterrence and that they adequately compensate Plaintiff for damage suffered.

### C. Attorneys' Fees and Costs

Plaintiff requests costs and attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). Because the Court will grant Plaintiff's Motion for Summary Judgment as to LLC's liability, Plaintiff is indeed entitled to seek reasonable attorneys' fees and costs.

## IV. CONCLUSION

There is no genuine dispute as to the material facts: Plaintiff was the exclusive licensee of the at issue broadcast; Defendants did not agree to a sublicense agreement with Plaintiff; and Defendants broadcast the program at this commercial establishment. Thus, Plaintiff is entitled to summary judgment and to statutory damages but has failed to present evidence sufficient for the Court to grant its request for enhanced statutory damages or to find Rubio liable in his individual capacity as a matter of law.

**IT IS THEREFORE ORDERED** granting in part Plaintiff J & J Sports Productions Incorporated's Motion for Summary Judgment (Doc. 36) as to liability against Defendant Grullo's Fine Mexican Food LLC.

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Summary Judgment (Doc. 36) as to liability against Defendant Jose O. Rubio in his individual capacity.

**IT IS FURTHER ORDERED** *sua sponte* granting Defendant Jose O. Rubio summary judgment in his individual capacity.

**IT IS FURTHER ORDERED** granting Plaintiff's request for $9,000 in statutory damages and denying Plaintiff's request for enhanced statutory damages.

**IT IS FURTHER ORDERED** denying Plaintiff's request for sanctions, which Defendants construed as a separate motion and filed a response (Doc. 44).

**IT IS FURTHER ORDERED** that Plaintiff shall file its application for attorneys' fees and costs no later than August 16, 2017. The Court will decide what attorneys' fees and costs will be awarded upon review of the parties' briefing and enter final judgment thereafter.

**IT IS FURTHER ORDERED** directing the Clerk to close this case.

Dated this 31st day of July, 2017.

Honorable John J. Tuchi
United States District Judge